IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

————————————————————————      :
JACLYN D. KONEWAL,                            :
                                              :        CIVIL ACTION
                   Plaintiff        :
                                              :
        v.                                    :        NO. 06-4203
                                              :
MICHAEL J. ASTRUE,[1]               :
COMMISSIONER OF THE                           :
SOCIAL SECURITY ADMINISTRATION,     :
                                              :
                   Defendant         :
————————————————————————      :

## ORDER

        AND NOW, this      day of            , 2008, upon

consideration of Plaintiff's Brief and Statement of Issues in

Support of Request for Review and Summary Judgement filed March 4,

2008; upon consideration of Defendant's Response to Request for

Review of Plaintiff filed May 7, 2008; and after careful review of

the Report and Recommendation of United States Magistrate Judge

Henry S. Perkin, IT IS ORDERED that:

        1.  the Report and Recommendation is APPROVED and

ADOPTED;

        2.  the relief sought by Plaintiff is DENIED; and

        3.  the decision of the Commissioner of Social Security

is AFFIRMED.

                              BY THE COURT:


        _____

                              ROBERT F. KELLY,
                              United States District Judge

---

        [1]     On February 12, 2007, Michael J. Astrue became the Commissioner of
the Social Security Administration and, therefore, he should be automatically
substituted as the Defendant in this action.  See Fed. R. Civ. P. 25(d)(1).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                       :
JACLYN D. KONEWAL,                     :
                                       :          CIVIL ACTION
                    Plaintiff          :
                                       :
        v.                             :          NO. 06-4203
                                       :
MICHAEL J. ASTRUE,[1]                  :
COMMISSIONER OF THE                    :
SOCIAL SECURITY ADMINISTRATION,        :
                                       :
                    Defendant          :
_____:

HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

        Plaintiff, Jaclyn Konewal ("Plaintiff"), brings this
action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C.
§ 405(g) by reference, to review the final decision of the
Commissioner of Social Security ("Defendant"), denying her claim
for disability insurance benefits ("DIB") and supplemental
security income ("SSI") provided under Titles II and XVI of the
Social Security Act ("the Act").  42 U.S.C. §§ 401-433, 42 U.S.C.
§§ 1381-1383f.  Subject matter jurisdiction is based upon section
205(g) of the Act.  42 U.S.C. § 405(g).  Presently before this
Court is Plaintiff's request for review[2] and Defendant's response
thereto.  For the reasons that follow, it is recommended that the

_____

        [1]     On February 12, 2007, Michael J. Astrue became the Commissioner of
the Social Security Administration and, therefore, he should be automatically
substituted as the Defendant in this action.  See Fed. R. Civ. P. 25(d)(1).

        [2]     On the same date that Plaintiff filed her request for review, she
simultaneously filed her brief in support thereof.

relief sought by Plaintiff be denied and the decision of the
Commissioner of Social Security be affirmed.

I.   **PROCEDURAL HISTORY**

Plaintiff protectively filed applications for DIB[3] and
SSI on December 31, 2002, alleging disability since August 31,
2000, due to anxiety and reflex sympathetic dystrophy ("RSD") in
both arms.  (R. 13, 26, 100, 155, 212-214, 239, 245, 797-799.)
Plaintiff's claim for disability benefits was denied at the
initial review level and upon reconsideration.  (R. 155, 169-
172.)  Thereafter, Plaintiff filed a timely request for a hearing
before an Administrative Law Judge ("ALJ").  (R. 173.)  A hearing
was held on November 14, 2003, at which Plaintiff, who was
represented by counsel, appeared and testified.  (R. 23, 24, 38-
75, 182-185.)  An impartial vocational expert ("VE"), Lee Levin,
also appeared and testified at the administrative hearing.  (R.
24, 75-97, 179, 186, 180-181, 187-188.)

Having considered evidence of Plaintiff's impairments,
the ALJ issued an unfavorable decision on April 19, 2004 in which
she found that although Plaintiff was unable to perform her past
relevant work, she was capable of performing a significant number
of jobs in the regional and national economies.  (R. 156-158,
159-168, Finding Nos. 8, 12.)  Thus, the ALJ concluded that

---

[3]      In order to be entitled to DIB, Plaintiff bore the burden of
showing that she became disabled prior to June 30, 2002, the date on which her
insured status expired.  (R. 14, 26, 100, Response at 1.)  See also 20 C.F.R.
§ 404.131(a) (2005); Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Plaintiff could not be found disabled within the meaning of the Social Security Act.  (R. 166-167, Finding No. 13.)

Plaintiff timely requested review of the ALJ's decision, which was granted by the Appeals Council on August 1, 2005.  (R. 190, 191-193, 194-196, 197.)  In so doing, the Appeals Council vacated the decision and remanded the case back to the ALJ to provide an adequate function-by-function assessment of the Plaintiff's ability to do work-related physical activities.  (R. 194.)  The Appeals Council also directed the ALJ to provide an adequate evaluation of the treating source opinion of Barry Schnall, M.D., update the evidence of record, obtain new vocational expert testimony, and more fully explain her functional capacity determination.  (R. 13, 194-195.)

On remand, a second hearing was held on December 13, 2005.  (R. 98-154.)  Plaintiff's treating physician, Dr. Barry Schnall, a physiatrist, testified by telephone on behalf of Plaintiff.  (R. 98, 103-114.)  Plaintiff also appeared and testified.  (R. 98, 122-132.)  In addition, an impartial vocational expert ("VE"), Bruce Martin, appeared and testified at the administrative hearing.  (R. 98, 136-152.)

Having considered evidence of Plaintiff's impairments for the second time, as well as the remand instructions from the Appeals Council, the ALJ issued another unfavorable decision on April 27, 2006 in which she again found that Plaintiff was

capable of performing a significant number of jobs in the regional and national economies.  (R. 20-21, Finding No. 8.) Thus, the ALJ concluded that Plaintiff could not be found disabled within the meaning of the Social Security Act.  (R. 21, Finding No. 9.)

Plaintiff timely requested review of the ALJ's second decision, which was denied by the Appeals Council on July 26, 2006.  (R. 5-7, 8, 9, 801-803.)  Thus, the ALJ's unfavorable decision of April 27, 2006 became the final decision of the agency.

Plaintiff initiated this civil action on September 20, 2006, seeking judicial review of the Commissioner's decision that she was able to perform a significant number of jobs in the regional and national economies, and thus was not entitled to DIB or SSI.  Because of Plaintiff's lack of prosecution, however, the Honorable Robert F. Kelly dismissed this case by Order dated February 29, 2008.[4]  Upon reconsideration, Judge Kelly reinstated this matter to active status on March 4, 2008.  Plaintiff's Brief and Statement of Issues in Support of Request for Review and Summary Judgement was filed on March 4, 2008.  Defendant's

---

[4]     In issuing this Order, Judge Kelly commented that the procedural Order filed in this matter on September 25, 2006 had not been followed by counsel nor had anything been filed by any party subsequent to the docketing of Defendant's answer to the Complaint.  Judge Kelly also noted for the record that the Court had sent to counsel a copy of the procedural Order and had tried to contact Plaintiff's attorney to receive any update on the status of this matter on numerous occasions, but had not received any return phone calls.

Response to Request for Review of Plaintiff was filed on May 7, 2008.  The matter was subsequently referred to this Magistrate Judge for preparation of a report and recommendation on May 8, 2008.

## II.  **FACTS**

Plaintiff, born on September 27, 1979, was twenty-six years old[5] at the time of her alleged onset of disability.  (R. 39, 212, 239.)  Plaintiff has a high school education and past work experience as a cashier, salesperson, check verifier, and fast food worker.  (R. 40, 41, 42, 76, 216-219, 246, 251, 266-274.)  Plaintiff alleges disability as of August 31, 2000, due to anxiety and RSD in both arms.  (R. 13, 26, 100, 155, 212-214, 239, 245, 797-799.)

In addition to reviewing the transcripts of all of the administrative hearings and administrative decisions in this case, this Court has independently and thoroughly examined all of the medical records and disability reports.  We incorporate all additional, relevant facts in our discussion below.

---

[5]     Because Plaintiff qualified as a "younger person" under the regulations, her age is not considered a significant impediment to adapting to new work situations.  20 C.F.R. § 416.963(b)(2000).  The Court must "cautiously scrutinize the employment prospects of so young an individual before placing [her] on the disability rolls."  Lockley v. Barnhart, No. 05-5197, 2006 U.S. Dist. LEXIS 29722, at *2 n.1 (E.D. Pa. May 16, 2006)(Baylson, J.), quoting, McLamore v. Weinberger, 530 F.2d 572, 574 (4th Cir. 1976).

## III. **LEGAL STANDARD**

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision.  Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence.  42 U.S.C. § 405(g).

"Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision.  Richardson v. Perales, 402 U.S. 389, 407 (1971), quoting, Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  See also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 113 S.Ct. 1294 (1993).  The ALJ must consider all relevant evidence in the record and provide some indication of the evidence he rejected and why he rejected it.  See Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  When determining whether the ALJ's decision is supported by substantial evidence, the Court may look to any evidence in the record, regardless of whether the ALJ cites to it in his decision.  Hook v. Bowen, 677 F. Supp. 305, 306 (M.D. Pa. 1988); Eposito v. Apfel, 66 Soc.Sec.Rep.Serv. (R.217, 2000 WL 218119, at *6 (E.D. Pa. Feb. 24, 2000).  Thus, the issue before this Court is whether the Commissioner's final decision of "not disabled" should be

sustained as being supported by substantial evidence.

Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [him] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, he will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," he will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether he can perform work he has done in the past despite the severe impairment - if he can, he will be found not disabled; and (5) if the claimant cannot perform his past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether he can perform other work which exists in the national economy. See id. § 404.1520(b)-(f).

Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431-32

(3d Cir. 1999).

## IV.  ALJ DECISION AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff is alleging disability since August 31, 2000, due to anxiety and RSD in both arms.  (R. 13, 26, 100, 155, 212-214, 239, 245, 797-799.)  The ALJ, however, proceeded through the sequential evaluation process and determined that Plaintiff was not disabled as a result of her impairments.[6]

In her Motion for Summary Judgment, Plaintiff asserts that the ALJ erred by (1) failing to include all of her functional limitations in the residual functional capacity ("RFC") determination and hypothetical question to the vocational expert; (2) improperly rejecting the opinion of her former treating physician, Barry Schall, M.D.; and (3) failing to comply with the requirements of Social Security Ruling 96-8p.

The issue before this Court, however, is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence.  Based on an independent review of the record and for the reasons that

---

[6]     The ALJ proceeded through all of the steps, finding that: (1) Plaintiff has not performed substantial gainful activity since her alleged onset of disability; (2) Plaintiff has an impairment (RSD of both upper extremities) that is severe; (3) Plaintiff's impairment does not meet or equal the criteria of any of the listings in Appendix 1, Part 404, Subpart P, Regulations No. 4; and (4) Plaintiff retains the residual functional capacity to perform unskilled light and sedentary work that requires the use of only one upper extremity.  (R. 16-20, Finding Nos. 1-3.)  The ALJ concluded that although Plaintiff was unable to perform any of her past relevant work, there are a significant number of jobs in the regional and national economies that she could perform given her age, education, work experience and RFC.  (R. 20-22, Finding No. 4-8.)  Thus, the ALJ found Plaintiff was not disabled.  (R. 21-22, Finding No. 9.)

follow, we find that the ALJ has provided appropriate and adequate support for her decision.  Accordingly, we conclude that the ALJ's decision was supported by substantial evidence of record.  We will, therefore, recommend that Plaintiff's request for review be denied.

## VI.   DISCUSSION

Disability is not determined merely by the presence of impairments, but rather on the functional restrictions the impairments place on an individual.  See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).  Plaintiff must establish that her impairments result in functional limitations so severe they preclude her from engaging in any substantial gainful activity. See Dupkunis v. Celebrezze, 323 F.2d 380 (3d Cir. 1963); Gardner v. Richardson, 383 F. Supp. 1 (E.D. Pa. 1974).  In this case, although Plaintiff alleges a combination of disabling impairments, she has failed to show that these impairments, alone or in combination, result in functional limitations that preclude substantial gainful activity.

### A.   Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination and Hypothetical to the Vocational Expert.

Plaintiff contends that the ALJ's residual functional capacity determination and hypothetical question posed to the VE were incomplete because they did not include all of her

9

limitations.[7]  (Pl. Br. at 14-20.)  Specifically, Plaintiff
argues that the ALJ should have included a limitation that she
had no functional abilities in both of her arms and hands.  (Pl.
Br. at 14-20.)  Plaintiff further contends that the ALJ should
have included a limitation with respect to her pain.  (Pl. Br. at
20.)

      The Third Circuit has consistently held that because
the VE provides opinion as to the claimant's residual functional
capacity,[8] the hypothetical posed to a VE must accurately
identify "all of a claimant's impairments that are supported by
the record; otherwise the question is deficient and the expert's
answer to it cannot be considered substantial evidence."
Chrupcala, 829 F.2d 1269, 1276 (3d Cir. 1987), citing, Podedworny

---

[7]  Plaintiff's challenges to the RFC assessment and hypothetical
question concern the use of her left upper extremity and alleged pain.  (Pl.
Br. at 14-21.)  As Defendants correctly aver, Plaintiff has not argued that
she cannot perform the sitting, standing, and walking requirements of light
and sedentary work, nor has Plaintiff suggested that she has any other
specific functional limitations stemming from RSD.  (Pl. Br. at 14-21, Def.
Br. at 4.)

[8]  Residual functional capacity measures

> what an individual can still do despite his or
> her limitations.  RFC is an administrative
> assessment of the extent to which an
> individual's medically determinable
> impairment(s), including any related symptoms,
> such as pain, may cause physical or mental
> limitations or restrictions that may affect his
> or her capacity to do work-related physical and
> mental activities.

SSR 96-8p, 61 Fed. Reg. 34474.  An RFC assessment must be based on all of the
evidence in the case record.  20 C.F.R. § 416.945(a); SSR 96-7p, 61 Fed. Reg.
34483; SSR 96-8p.

v. Harris, 745 F.2d 210 (3d Cir. 1984) and Wallace v. Sec'y, 722
F.2d 1150, 1155 (3d Cir. 1983)(stating the expert must have
evaluated claimant's particular impairments as contained in the
record).

      The ALJ must assess the residual functional capacity
that includes all of Plaintiff's limitations; however, a
claimant's statements about her impairments will not alone serve
to establish disability.  20 C.F.R. § 404.1529(a).  Subjective
symptoms must be supported by objective evidence.  Hartranft v.
Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  That is, the ALJ's RFC
determination must include all of Plaintiff's limitations, but
only those limitations that are fully credible, or supported by
objective evidence, need be included.[9]

      After reviewing all of the record evidence, the ALJ
explicitly concluded that

> the [Plaintiff] has the residual functional
> capacity for light, unskilled work that can
> be performed with the use of one upper
> extremity.  She is limited to unskilled work
> due to distractions secondary to pain.  She
> is limited to the use of her left upper
> extremity because of RSD in her right upper
> extremity.  There in [sic] no substantial
> evidence that, despite her diagnosis of RSD
> in her left upper extremity, she is limited
> in her use of her left upper extremity.
> Despite her complaints that she can barely

---

[9]    Though hypotheticals posed to a VE must accurately identify "all
of a claimant's impairments, [only those impairments] that are supported by
the record" must be reflected in the hypothetical posed to the VE.  Chrupcala
v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987), citing, Podedworny v. Harris,
745 F.2d 210 (3d Cir. 1984)(citation omitted).

> use either arm, this is an individual who
> travels around the city, takes long vacation
> trips, smokes a daily pack of cigarettes and
> tested positive for marijuana use since the
> last hearing.  The claimant testified that
> her RSD is "a lot worse" since she last saw
> Dr. Schnall and that her right arm "blows up"
> at times.  However, these claims are
> inadequately documented over the past two
> years.  There are no documented deficits in
> the claimant's lower extremities, permitting
> her a full range of standing and walking.
> Because she is limited to one upper
> extremity, I find that she is capable of no
> more than light-exertion work.

(R. 16, 19, Finding No. 3.)  As demonstrated by this finding, and despite Plaintiff's allegation to the contrary, the ALJ explicitly accounted for Plaintiff's complaints of pain in her RFC determination by limiting her to unskilled work.  (R. 16, 19, Finding No. 3.)

Further, after thoroughly reviewing the administrative record, we conclude that the ALJ's RFC assessment is supported by substantial evidence.  More specifically, we find that the medical evidence fails to demonstrate that Plaintiff had disabling functional limitations in her left arm.  The ALJ noted the following with respect to Plaintiff's left upper extremity:

> The evidence that the [Plaintiff] is impaired
> in her left upper extremity is very limited.
> On January 5, 2004, the [Plaintiff] stated to
> Dr. Pluta that 'sometimes' she can 'barely
> use' her left hand.  However, there was no
> indication how often 'sometimes' is or
> whether that impairment continued.  On
> November 4, 2005, the [Plaintiff] had full
> range of motion in her left upper extremity
> [R. 782-796].

12

(R. 19.)   In addition, when Plaintiff was specifically questioned by the ALJ about her ability to use her hands to smoke and take public transportation, Plaintiff testified that she used her left arm and hand for these activities.   (R. 66.)

Our review of the record shows that on October 25, 1999, Plaintiff sustained a work-related injury to her left thumb which was repaired in December 1999.   (R. 295-296.)   In November 2000, Plaintiff underwent left carpal tunnel release surgery at Temple University Hospital.   (R. 424-425, 426-427.)   Following the surgery, Plaintiff's surgeon, Amitabha Mitra, M.D., documented satisfactory range of motion in Plaintiff's left arm and subsequently noted considerable improvement in her left hand function.   (R. 415, 419-420.)   Plaintiff did not require any additional surgeries on her left arm or hand and, with the exception of some physical therapy in 2001, her left arm symptoms were treated primarily with pain medication.   (R. 318-382, 582-598, 658-719, 748-796.)

The RFC determination in this case is supported by and generally consistent with the treatment records and conclusions of several physicians who examined Plaintiff during the relevant time period.[10]   More specifically, we note the most recent

---

[10]      In his brief, Defendant argues that the treatment records and objective clinical findings documented by five examining physicians support the ALJ's conclusion that Plaintiff did not have functional limitations in her left arm and hand.  We agree and find that the Commissioner correctly summarized the following treatment records pertaining to Plaintiff's alleged left arm impairment:

treatment records of Deepak Mehrotra, M.D., Plaintiff's pain

management specialist.  (R. 782-796.)  On November 4, 2005, Dr.

---

Dr. Mitra, who treated Plaintiff between December 1999 and April 2001 (Tr. 414-57), reported in March 2001 that Plaintiff's left hand function had 'improved considerably' and 'it almost look[ed] normal' (Tr. 415). Dr. Mitra encouraged Plaintiff to move her hands (Tr. 414-15).

During an examination in October 2001, Robert L. Knobler, M.D., Ph.D., documented no abnormal findings on Plaintiff's left side, except for an abnormal color pattern in her left hand (Tr. 315).

In November 2001, Stephanie Sweet, M.D., a hand surgeon, provided deposition testimony in conjunction with Plaintiff's workers' compensation case (Tr. 458-558). Dr. Sweet, who had examined Plaintiff on October 10, 2000, and February 6, 2001, respectively (Tr. 466, 483, 549, 551-58), testified that Plaintiff exhibited 'some lack of effort' during testing (Tr. 485), and had a 'very unusual response' to certain tests (Tr. 485). According to Dr. Sweet, 'the only objective findings [on Plaintiff's left side] were a Tinel over the ulnar digital nerve of the left thumb at the previous site of laceration'(Tr. 549). Based upon her examinations and a review of Plaintiff's other medical records, Dr. Sweet opined that Plaintiff had RSD on her right side, but not on her left side (Tr. 540, 542). Like Dr. Mitra, Dr. Sweet advised that Plaintiff's use of her hands would improve her condition (Tr. 497, 549, 551, 554).

The notes of Christine Pluta, M.D., Plaintiff's treating physician between June 2003 through December 2005, show only that she prescribed pain medication for RSD (Tr. 748-81). Plaintiff presented left arm and hand complaints to Dr. Pluta only twice during this two-and-a-half year period (Tr. 752-53). In January 2004, Plaintiff told Dr. Pluta that 'sometimes she can barely use' her left arm and hand (Tr. 752). In April 2004, Plaintiff complained of left arm and hand pain following an automobile accident which had occurred a few days earlier (Tr. 752-53). Significantly, Dr. Pluta failed to document left arm limitations or abnormal findings on examination (Tr. 748-81).

In November 2005, Deepak Mehrotra, M.D., a pain management specialist, reported that Plaintiff had full range of motion and normal motor strength in her left arm (Tr. 785). Dr. Mehrotra offered a presumptive diagnosis of chronic regional pain syndrome in her right arm only (Tr. 792, 794).

(Def. Br. at 5-7.)

Mehrotra reported that Plaintiff had full range of motion in her
left upper extremity as well as normal motor strength in her left
arm.  (R. 785.)  Dr. Mehrotra offered a presumptive diagnosis of
chronic regional pain syndrome of the right upper extremity only.
(R. 792, 794.)  Significantly, Dr. Mehrotra did not document any
left arm limitations.  (R. 783-796.)

        We also find that the ALJ was not bound by the VE's
response to the alternative hypothetical question posed by
Plaintiff's counsel that asked him to assume that Plaintiff was
unable to use both of her hands.  (R. 140-141.)  This alternative
limitation regarding the inability to use both of her hands,
despite Plaintiff's assertion to the contrary, was not the same
functional limitation that the ALJ found to exist in Plaintiff's
case.[11]  (R. 16, 19, Finding No. 3.)  As stated above, only those
impairments that are supported by the record must be reflected in
the hypothetical posed to the VE.  Chrupcala, 829 F.2d 1269,
1276.  That is, the ALJ need not include impairments that are not
supported by the record.  In this case, there was no credible
evidence in the record to support Plaintiff's inability to use
both of her hands.  The ALJ, therefore, did not have to rely upon
the alternative hypothetical question as a basis for her
decision.

---

[11]     Although the ALJ found that Plaintiff's only severe impairment was
reflex sympathetic dystrophy of the upper extremities, she appropriately
concluded, based on the medical evidence, that Plaintiff was not limited in
her use of her left upper extremity.

Instead, we conclude that the ALJ appropriately relied upon the hypothetical question that asked Mr. Martin whether Plaintiff could perform occupations, other than her prior work, with the proposed restrictions and limitations enumerated above. (R. 141-142, 144-147.)  This hypothetical question directly tracked the ALJ's residual functional capacity finding.  (R. 16, 19, Finding No. 3.)  In response to this proper hypothetical question, Mr. Martin identified locker room attendant, usher, surveillance system monitor, and unskilled inspection as examples of occupations that Plaintiff could perform in the national and local economies.  (R. 20-21, 144-147.)  Mr. Martin explicitly testified that these jobs could be performed by a one-armed person because they did not require repetitive bimanual activity. (R. 145-146.)  Accordingly, we find that the ALJ appropriately relied on this evidence to support her ultimate decision that Plaintiff was not disabled.  (R. 20-21.)

In this matter, we find that the hypothetical question posed to the VE does not lack consideration of any of Plaintiff's impairments, and the ALJ accurately presented Plaintiff's functional limitations to the vocational expert who found Plaintiff able to work.  Consequently, we find that the hypothetical posed to the VE was a full and accurate reflection of Plaintiff's impairments; as such, the VE's answer is considered substantial evidence.

16

**B.   Whether the ALJ Failed in Her Duty to Analyze All of the Medical Evidence or Set Forth Valid Reasons for Assigning Little Weight to Such Evidence.**

Plaintiff argues that the ALJ erred by failing to afford proper weight to the disability opinion and RFC assessment of her former treating physician, Barry Schnall, M.D. (Pl. Br. at 16-17.) Though Plaintiff specifically contends that great weight should have been given to the conclusions of Dr. Schnall, as more fully explained below, this assertion is not supported by substantial evidence of record.

Treating physician reports are to be given special significance. Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000). The Morales court stated, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a period of time.'" Id. at 317, quoting, Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999), quoting, Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987). A treating source's medical opinion is entitled to significant weight where the opinion is well-supported by medical evidence and not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527(d); see also Morales, 225 F.3d at 310, 317 (3d Cir. 2000); Plummer, 186 F.3d at 429. The ultimate disability determination, however, is reserved for the ALJ and a treating

17

physician's opinion on that topic is not entitled to any special significance.  Walker v. Barnhart, 111 Soc.Sec.Rep.Serv. 567, 568, 2006 WL 1789043, *2 (E.D. Pa. 2006), citing, 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); SSR 96-5p.

On December 4, 2003, Dr. Schnall completed a Functional Capacities Form stating that, with respect to her upper extremities, Plaintiff was unable to use her hands for any frequent or repetitive activities, and that her ability to grasp was difficult and limited.  (R. 579-580.)  Dr. Schnall reported that Plaintiff was able to sit four hours at a time and stand and walk four hours at a time, with the ability to sit, stand, and walk for an entire eight hour day.  (R. 579.)  He stated that Plaintiff could occasionally lift and carry up to five pounds. (R. 579.)  Dr. Schnall further determined that Plaintiff should be precluded from working around unprotected heights and marked changes in temperature or humidity and that she should not be permitted to operate automotive equipment.  (R. 580.)

Approximately two years later, Dr. Schnall testified via telephone at Plaintiff's second administrative hearing. (R. 98, 103-114.)  At the hearing, Dr. Schnall testified, *inter alia*, that Plaintiff was unable to effectively use her right arm for activity and was very limited in her range of motion of the right shoulder and right wrist.  (R. 104-105.)  Because of this, Dr. Schnall concluded that Plaintiff was not able to do any bimanual

18

tasks and that her condition equated to a 50 percent impairment
of her body function.  (R. 105.)  Dr. Schnall also testified
that, in his opinion, Plaintiff was not capable of any light duty
employment and would not be able to consistently do sedentary
employment because she was limited to the use of only one arm.
(R. 106.)  Dr. Schnall, however, did not state that Plaintiff had
any functional limitations in her left arm.[12]  (R. 104-106.)

The ALJ explicitly considered the foregoing opinions of
Dr. Schnall (R. 16, 161-163), but did not accept his opinion of
disability.  (R. 16.)  We find that the ALJ appropriately
articulated her reasoning in applying limited weight to the
opinions of Dr. Schnall by stating as follows:

> At the second hearing, Dr. Barry Schnall
> testified by telephone at the request of the
> [Plaintiff] and her attorney.  Dr. Schnall
> acknowledged that, due to health insurance
> issues, he has not treated the [Plaintiff]
> for the past several years.  Dr. Schnall also
> admitted that the [Plaintiff] has never had a
> bone scan confirmation of her RSD diagnosis.
> He testified that, based on his professional
> expertise and his prior treatment of the
> [Plaintiff], he knows that she has RSD of the
> right upper extremity.  He concluded that she
> is 'unable to do a bi-manual tasks' due to
> diminished sensation, diminished motor power,
> and limited range of motion in the right
> wrist and right shoulder.  Dr. Schnall also
> concluded that the [Plaintiff] cannot do

---

[12]     Plaintiff avers that Dr. Schnall testified that she could not use
either of her upper extremities for work.  Pl. Br. at 17.  Our review of Dr.
Schnall's testimony, however, reveals that Dr. Schnall only opined that
Plaintiff was unable to functionally use her right arm.  (R. 106.)  He did not
testify that Plaintiff was unable to use her left arm.  In fact, Dr. Schnall
specifically testified that Plaintiff would be able to use one arm to work.
(R. 106.)

> sedentary work due to chronic pain
> (testimony).  I note that Dr. Schnall did not
> state that the [Plaintiff] had any
> limitations in her left upper extremity or
> her lower extremities.  I properly do not
> accept his opinion of disability because it
> is not supported by the overall evidence of
> record, including the treatment records of
> Dr. Pluta, who replaced Dr. Schnall, as the
> [Plaintiff]'s primary treating physician over
> two years ago, 20 CFR 404,1527(d).

(R. 16-17.)  As indicated above, the ultimate disability and RFC
determinations are reserved for the ALJ and a treating
physician's opinion on those topics is not entitled to any
special significance.  Walker v. Barnhart, 111 Soc.Sec.Rep.Serv.
567, 568, 2006 WL 1789043, *2 (E.D. Pa. 2006)(the ultimate
disability determination is reserved for the ALJ and a treating
physician's opinion on that topic is not entitled to any special
significance), citing, 20 C.F.R. §§ 404.1527(e)(1),
416.927(e)(1); SSR 96-5p.  For this reason, the ALJ had no
obligation to accept Dr. Schnall's opinion.

In addition, based on our thorough review and
consideration of the medical evidence, we conclude, as the ALJ
discussed, that Dr. Schnall's assessments were not supported by
the overall evidence of record.  (R. 16-17.)  More specifically,
Dr. Schnall's opinion conflicted with the opinion of hand
surgeon, Stephanie Sweet, M.D., who opined that as of February
2001, Plaintiff could return to light duty work with no
restrictions.  (R. 18-19, 549, 551, 554, 558.)  Further, although

20

seemingly abandoned by his testimony at the second administrative hearing, Dr. Schnall's opinion that Plaintiff was unable to use both of her hands was further undermined by opinions of Drs. Mitra, Knobler, Sweet, Pluta, and Mehrotra, which opinions were discussed *infra* in footnote ten.  In short, the treatment records and objective clinical findings documented by these five examining physicians support the ALJ's conclusion that Plaintiff did not have functional limitations in her left arm and hand.[13]

---

[13]     As Defendant correctly avers, Dr. Schnall's initial opinion that Plaintiff did not have any functional use of her left arm and hand is not supported by his own treatment notes.  Def. Br. at 14-15.  More specifically, Defendant summarizes Dr. Schnall's treatment records as follows:

> At visits between July 2001 and August 2002, the only abnormal finding documented by Dr. Schnall was some reduced sensation in Plaintiff's left thumb (Tr. 332-82). He reported no other abnormalities, and even noted that she had no evidence of left hand RSD (Tr. 349-82).

> The first time that Dr. Schnall even diagnosed RSD on Plaintiff's left side was in September 2002 (Tr. 324-26).  However, at that time, he also reported that Plaintiff had normal range of  motion in her left elbow and shoulder (Tr. 321). Between October 2002 and September 2003, Dr. Schnall consistently noted that Plaintiff had more signs and symptoms of RSD on her right side than her left side (Tr. 318-22, 581-99). He repeatedly reported that Plaintiff had full range of motion in her left elbow, left wrist and left shoulder, and minimal pain to touch on her left side (Tr. 590, 593, 596).

> In July 2003, Dr. Schnall noted that she had stable movement in her left arm, and that RSD primarily affected her right side (Tr. 587, 590). In August 2003, he reported good movement in Plaintiff's left wrist, elbow, and shoulder (Tr. 584). In September 2003, Dr. Schnall noted good active movement, good grip, and only minimal pain in Plaintiff's left hand, and that the RSD on her left side had stabilized (Tr. 582).

Def. Br. at 14-15.

Under the regulations, an ALJ may consider numerous factors in assessing the opinion of a medical source, including the evidence supporting the opinion, the consistency of the opinion with the record as a whole, and other relevant factors. 20 C.F.R. §§ 404.1527(d), 416.927(d).  In her decision, the ALJ thoroughly considered the examinations conducted by all of the physicians in this case, including the opinions of Dr. Schnall. (R. 16, 161-163.)  Based on our thorough review of the administrative record, we find that the ALJ acted in accordance with her responsibility to determine the credibility of medical evidence, and she gave specific, legitimate reasons for discrediting the disability assessments of Dr. Schnall.

**C.   Whether the ALJ Failed in Her Duty to Comply with Social Security Ruling 96-8p.**

Plaintiff's final contention is that the ALJ failed to perform "an adequate function-by-function assessment (with specific references to the evidence of record) of the [Plaintiff]'s ability to do work related physical activities" in accordance with Social Security Ruling ("SSR") 96-8p.  Pl. Br. at 14-16.

SSR 96-8p provides, in pertinent part, that

> [t]he RFC assessment must first identify the
> individual's functional limitations or
> restrictions and assess his or her
> work-related abilities on a
> function-by-function basis, including the
> functions in paragraphs (b), (c), and (d) of

22

20 CFR 404.1545 and 416.945.[14] Only after
that may RFC be expressed in terms of the
exertional levels of work, sedentary, light,
medium, heavy, and very heavy.

See SSR 96-8p: "Policy Interpretation Ruling Titles II and XVI:

Assessing Residual Functional Capacity in Initial Claims."

Based on our review of the ALJ's decision in this case,

we conclude that the ALJ complied with the requirements of SSR

96-8p by adequately explaining Plaintiff's specific functional

---

[14]     The functions referred to in SSR 96-8p include the following:

(b) Physical abilities. When we assess your physical
abilities, we first assess the nature and extent of
your physical limitations and then determine your
residual functional capacity for work activity on a
regular and continuing basis. A limited ability to
perform certain physical demands of work activity,
such as sitting, standing, walking, lifting, carrying,
pushing, pulling, or other physical functions
(including manipulative or postural functions, such as
reaching, handling, stooping or crouching), may reduce
your ability to do past work and other work.

(c) Mental abilities. When we assess your mental
abilities, we first assess the nature and extent of
your mental limitations and restrictions and then
determine your residual functional capacity for work
activity on a regular and continuing basis. A limited
ability to carry out certain mental activities, such
as limitations in understanding, remembering, and
carrying out instructions, and in responding
appropriately to supervision, co-workers, and work
pressures in a work setting, may reduce your ability
to do past work and other work.

(d) Other abilities affected by impairment(s). Some
medically determinable impairment(s), such as skin
impairment(s), epilepsy, impairment(s) of vision,
hearing or other senses, and impairment(s) which
impose environmental restrictions, may cause
limitations and restrictions which affect other
work-related abilities. If you have this type of
impairment(s), we consider any resulting limitations
and restrictions which may reduce your ability to do
past work and other work in deciding your residual
functional capacity.

See 20 C.F.R. §§ 404.1545, 416.945.

abilities.  More specifically, the ALJ determined that Plaintiff could not use her right arm due to the functional limitations caused by her diagnosis of RSD.  (R. 19.)   The ALJ concluded that, despite a diagnosis of RSD in her left arm, there was no substantial evidence that Plaintiff was limited in that arm.  (R. 19.)  The ALJ also explained that because there were no documented deficits in the Plaintiff's lower extremities, she could perform a full range of standing, walking, and sitting. (R. 19.)  The ALJ limited Plaintiff to unskilled work to accommodate any pain-related difficulties or mental distractions (R. 19) and set forth additional restrictions by noting that the jobs identified by the VE would not expose the Plaintiff to working at unprotected heights, near moving machinery or involve automotive equipment.  (R. 21.)

In addition, the ALJ further identified and defined the Plaintiff's functional abilities by stating as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds (20 CFR 404.1567, 416.967).  Such work also requires a good deal of walking or standing, or involving sitting most of the time with some pushing and pulling of arm or leg controls (20 CFR 404.1567, 416.967).  To be considered capable of performing a wide range of light work, one must have the ability to do substantially all of these activities (20 CFR 404.1567, 416.967).  If someone can do light work, she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability

24

> to sit for long periods of time (20 CFR
> 404.1567, 416.967.)

(R. 20.)

Based on the foregoing, we find that the ALJ fully satisfied the regulations and rulings when she assessed an RFC which adequately captured all of Plaintiff's functional limitations.  In so doing, the ALJ appropriately determined that Plaintiff retained the functional abilities necessary to perform a reduced range of unskilled light and sedentary work.

**VI.   <u>CONCLUSION</u>**

Having reviewed the evidence of record, we find it is clear that substantial evidence exists to support the opinion and conclusions of the ALJ as to this Plaintiff's alleged disability. Plaintiff has failed to demonstrate that there is some "medically determinable basis for an impairment that prevents her from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. § 423(d)(1).  Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this 30th day of December, 2008, it is RESPECTFULLY RECOMMENDED that the relief sought by Plaintiff be DENIED and the decision of the Commissioner of Social Security be AFFIRMED.

BY THE COURT:


*/s/ Henry S. Perkin*
HENRY S. PERKIN,
United States Magistrate Judge